Argued and submitted November 19, affirmed December 8,
reconsideration denied January 29,
petition for review denied March 4, 1981 (290 Or 551)

HARDER,
*Appellant,*
*v.*
HARDER,
*Respondent.*

(No. 353-909, CA 16397)

619 P2d 1367

Ferris F. Boothe, Portland, argued the cause and filed the briefs for appellant.

Eugene L. Parker, Portland, argued the cause for respondent. With him on the brief was Parker & McCann, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

PER CURIAM.

## PER CURIAM

Plaintiff moved to set aside a property settlement agreement and a divorce decree incorporating that agreement on the ground that the primary asset of the parties, *i.e.,* the interests of defendant in certain family corporations, was not included or considered in the agreement and decree by reason of misrepresentations by the defendant and his attorney. On *de novo* review, we agree with the opinion of the trial judge, which we adopt as our own:

"* * * * *

"I find the facts of this case to be as follows:

"The petitioner and respondent were married on December 2, 1961. Throughout the greater part of the marriage, respondent worked for the family business which was owned and operated primarily by his grandfather and father. From time to time respondent received stock in the family businesses. He executed notes payable to the corporation for the stock. Some notes were subsequently forgiven as gifts. Petitioner and respondent were equally aware of these stocks, notes, and gift transactions and were equally unaware of the value of the interest transferred to the respondent or of the outstanding liabilities resulting from unforgiven notes. Petitioner and respondent were both young, limited in education, and unsophisticated in business matters.

"In the latter part of 1969 the parties separated and petitioner consulted an attorney regarding a dissolution of the marriage. A petition was filed and in April, 1970, petitioner, through her attorney, caused the preparation of a proposed property settlement which she executed. The settlement was then transmitted to respondent's attorney and after subsequent negotiations a new settlement was prepared and executed by the parties. The terms of the new settlement agreement gave to petitioner substantially all of the marital assets and was the result of petitioner's agreement to renounce her claim for spousal support. Neither property settlement agreement mentioned the interest of the parties in the family corporation.

"Throughout the dissolution proceedings both parties operated in the mistaken belief that respondent's interests in the family businesses were of insignificant value although both appreciated that the family businesses were successful. Both parties recognized respondent's interest in the businesses primarily as a source of income production

through his employment. Each party was represented by counsel throughout the dissolution proceedings and both attorneys were aware that respondent had some interest in the family businesses.

"A Decree of Divorce was entered on August 4, 1970; its terms incorporated the property settlement agreement. The case has been in the courts more or less ever since the Decree was signed. Both parties have, in subsequent hearings, made inaccurate statements under oath. The respondent, in 1974, at a hearing regarding modification of child support, estimated that the value of his interest in the family corporation at the time of the dissolution was $400,000. That estimation was inaccurate and recklessly given and provided that stimulus for the current litigation. The book value of respondent's interest in the family corporation in June, 1970 just prior to the dissolution was $185,000.

"I do find that there was no intentional misrepresentation by the respondent to the petitioner of the value of his business interest prior to and during the negotiations which culminated in the property settlement agreement. I do find that both parties were aware that respondent did in fact have an interest in the business. I further find that petitioner did not rely on any representation made by the respondent regarding the value of his interest. She chose not to pursue the valuation of the business interest out of her desire to protect her relationship with respondent's parents. I further find that attorney Holmes did not misrepresent the value of respondent's business interest to petitioner's attorney.

"I have no difficulty finding that the property settlement agreement in this case fell short of an equitable division of the marital assets. I am of the opinion that a disproportionate division of the marital assets, not shown to be the result of the respondent's misconduct or overreaching, is insufficient cause to vacate a Decree. *Hansen v. Hansen,* 31 Or App 823, 571 P2d 568 (1977).

"The petitioner, in order to make out a case, must go beyond inequity and establish her injury attributable to fraud on the part of the respondent. Fraud can only be established by clear and convincing proof of the perpetration of an intentional wrong by the respondent or the breach of a duty growing out of a fiduciary relationship. *Mattoon v. Cole,* 172 Or 644, 143 P2d 679 (1943). Respondent's inability to evaluate his interest in the family business resulted from his own lack of business acumen and

not from an attempt to mislead the petitioner. Consequently, if she is to recover it would have to be on the existence of a fiduciary relationship between herself and the respondent.

"I can find no Oregon case standing for the proposition that a fiduciary relationship exists between parties to a dissolution proceeding; and, the Hansen case, Supra, appears to militate against such a proposition.

"I appreciate that the Court in the case of *Bower v. Bower,* 1 Or App 504, 464 P2d 710 (1970), did hold that there is a fiduciary relationship between engaged persons which requires full and complete disclosure of assets, the subject of an anti-nuptial [sic] agreement. I think divorcing parties are readily distinguishable from engaged parties. The trust, confidence, faith and reliance of the parties to one another is very high before the altar but correspondingly low before the bench.

"Even if the Court were to concede, for the purpose of argument, that something in the nature of a fiduciary relationship existed between these parties, there is still the problem that in this instance the parties dealt with one another through their respective attorneys. I think the Court must place importance on the fact that petitioner was represented by counsel of her own choosing. He prepared the original property settlement agreement knowing of the existence of the husband's interest in the family business. It appears to the Court that petitioner's attorney relied on petitioner's assessment of the business interest rather than on his own investigation of the marital assets. Undoubtedly, the petitioner was hurt by the failure to investigate but injury alone should not subject the respondent to liability.

"Ultimately, I am of the opinion that the petitioner relied upon her own assessment of the value of the family interest and weighed that interest against her continuing relationship with the respondent's family and opted to preserve the latter.

"The petitioner has failed to convince the Court by clear and convincing evidence that the property settlement agreement in this instance was the result of fraud. At most, she has established that the settlement resulted from a mutual mistake, attributable as much to her own conduct as that of the respondent. I do not believe that the law of recission is applicable in a suit to set aside a Decree of Divorce nine years after its entry. The strong public policy favoring the finality of judgments and decrees

requires more than proof of a mutual mistake. In the absence of proof that the respondent intentionally defrauded the petitioner, or that he failed to fulfill a duty owed to the petitioner, thereby causing her harm, the Court must hold that the Motion to Vacate the Decree and to amend the property settlement agreement incorporated therein is not well taken and must be denied.

"* * * * *"

Affirmed; no costs allowed.