Argued and submitted September 14, reversed and remanded on appeal; affirmed on cross-appeal December 29, 1993, reconsideration denied February 23, petition for review denied March 22, 1994 (318 Or 478)

In the Matter of the Marriage of

Wayne Earl AUBLE,
*Appellant - Cross-Respondent,*

*and*

Wilma Jean AUBLE,
*Respondent - Cross-Appellant.*

(89-3301; CA A76441)

866 P2d 1239

Margaret H. Leek Leiberan argued the cause for appellant - cross-respondent. With her on the briefs was Leiberan & Gazeley.

John H. Heald argued the cause for respondent - cross-appellant. With him on the brief was Smith, Freed, Heald & Chock, P.C.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

### EDMONDS, J.

Husband appeals from a judgment setting aside an original dissolution judgment on wife's motion and adjudicating property division, child support and spousal support issues. ORCP 71. Wife cross-appeals. We reverse on appeal and affirm on cross-appeal.

The parties were married in 1978 and have two children. In December, 1988, they separated, and in January, 1989, wife informed husband that, as far as she was concerned, their marriage was over. Husband remained in the family home with the children, and wife moved to Estacada with her male companion. While in Estacada, she worked as a blackjack dealer, earning $14,000 during the first three months of 1989. In March, 1989, she and her companion were arrested for their involvement in illegal gambling activities. Those charges were disposed of in April, 1989.[1]

Thereafter, wife and her companion moved to Netarts and began making plans to move to California. In April, 1989, she and husband met at wife's home in Netarts to discuss the dissolution of their marriage. Wife proposed that the children stay with husband, that she receive nothing from the marital estate, and that she not be required to pay child support.[2] Husband agreed. In May, 1989, wife and her companion moved to California. There, wife worked as a retail

---

[1] It appears that criminal and civil RICO charges were resolved by the payment of a combined fine against wife and her companion of $40,000, and that wife was placed on probation.

[2] During the hearing, husband offered evidence of the following excerpt from wife's deposition concerning the parties' April, 1989, meeting:

"In your deposition you indicated that we discussed what happened — that you were asked, 'What do you recall about the conversation?' the answer was, 'We discussed what happened in Estacada.' Then the question was asked, 'What did you talk about?' 'Just that at this point in time in my life I could offer nothing more to [husband]. I had — could not offer any kind of child support. I didn't know where I was going or what I was doing, and so I felt it was fair to leave [husband] with all of our belongings, the house and everything, except my clothes.' Question: 'What response, if any, was there from [husband]?' '[Husband] seemed to feel that it was fair and offered his help, if I ever needed any help.' 'What then?' 'Then we [wife and companion] moved away.' "

Wife's companion, who was present at that meeting, also testified that he believed that the property settlement was proposed by wife, "that she take absolutely nothing of all their earthly possessions in lieu of child support, and [that husband] agreed to that."

sales person, and in less than a year, was promoted to assistant manager. Subsequently, she has worked as a manager at several different retail clothing stores.

In July, 1989, husband informed wife that he had hired an attorney and was going to file a petition to dissolve their marriage. According to wife, she and husband discussed whether she needed her own attorney. Husband told her that his attorney could handle the proceeding, and that she did not need an attorney. Subsequently, husband filed a petition for dissolution, which requested, in part:

> "[Husband] should be awarded all right, title and interest [in the parties' house and real property] with right to immediate possession. [Husband] should be required to pay all mortgage payments on said real property, all real property taxes and assessments thereon and hold [wife] harmless therefrom.
>
> "* * * * *
>
> "All personal property of the parties has been divided in a fair and equitable manner. Each party should be awarded the personal property now in that party's possession.
>
> "In addition, the [husband] should be awarded as his sole and separate personal property free from any claim by [wife] whatsoever, the following described property: the 1981 Honda Civic, Oregon license #PSF 763, all U.S. Savings Bonds and Public Petitioner's [*sic*] Employee Retirement System pension. The [wife] should be awarded as her sole and separate personal property free from any claim by [husband] whatsoever, the following described property: the 1981 Chevrolet Monte Carlo Oregon license #PSF 755."

In addition, the petition requested that judgment be entered against wife for $50 per month child support.

When wife received a copy of the petition, she gave it to her companion to read. Subsequently, she called husband to discuss the child support provision, which she believed was contrary to their original agreement. She testified that husband explained that, according to his attorney, a nominal amount of child support was required and that she did not have to pay the support in the future unless she wanted to. Wife agreed to the petition and ultimately signed a stipulation waiving the waiting period required by ORS 107.065(1). In September, 1989, the dissolution judgment was entered.

In November, 1989, husband contacted his attorney to discuss a modification of the child support provisions. The attorney testified:

"The concern was whether or not the — [wife] was making much more money than what [husband] had indicated at the time. [Husband] had told me originally at the time that [wife] was working as a sales person at Macy's department store and we assumed that she was earning minimum wage and — at that time and — but when she sent this [itemized list of income and expenses to husband], there was substantially more income than what we had anticipated at the time of the filing of the divorce."

Thereafter, husband hired a new attorney, and, in April, 1990, filed a motion to increase wife's child support obligation from $50 per month to $425 per month. In response, wife moved to set aside the dissolution judgment pursuant to ORCP 71. She alleged that the dissolution judgment "was obtained through fraud, misrepresentation, or other misconduct" and asserted that she had relied on husband's purported promise that he would not seek additional child support in the future.

The trial court ruled that wife was entitled to have the judgment set aside on the basis that husband had breached the fiduciary duty that he owed to her. It based its holding on findings that husband had represented to wife that the amount of child support in the judgment was a nominal amount, that he would not attempt to collect more than the amount awarded, and that, before the petition for dissolution was filed, "[he had] represented to wife that his attorney would take care of the whole matter, and that the parties only needed one attorney." The trial court also said that husband did not disclose to wife the present value of his retirement account.[3]

---

[3] The only ground raised in wife's petition to set aside the dissolution judgment was that husband had represented that he would accept nominal child support in exchange for receiving a disproportionate share of the marital assets, that wife relied on that representation and that husband had subsequently moved to modify the child support provisions. At hearing, wife's attorney argued the additional ground that husband had failed to disclose the value of his PERS account. That account was valued at $23,110 at the time of separation, and at $28,400 at the time of dissolution. Husband did not object to wife raising a new ground on the day of trial.

As a result of those findings, the court set aside the dissolution judgment and held a trial on the issues of property division and support. It ruled that wife was entitled to receive one-half of husband's PERS account and one-half of the value of the marital home. It ordered that husband pay spousal support of $200 per month for three years, and that wife pay child support of $415 per month. The court then determined that the present value of the child support that wife would pay until the children were eighteen was equivalent to her interest in husband's PERS account, the marital home and the spousal support. It concluded that those amounts should offset each other, and entered a judgment of dissolution terminating child support, giving husband the marital home and his PERS account and providing for no spousal support.[4]

In her brief, wife says that her motion to set aside the judgment is based on ORCP 71B(1)(c), which provides that relief from a judgment may be granted when the judgment is procured by "fraud, misrepresentation, or other misconduct of an adverse party." A motion to set aside a judgment of dissolution is addressed to the sound discretion of the trial court and will not be overturned absent a clear showing of abuse. *Davidson and Davidson*, 53 Or App 516, 519, 632 P2d 35, *rev den* 291 Or 771 (1981). When the facts do not support a finding under ORCP 71B(1)(c) of fraud, misrepresentation, or other misconduct sufficient to set aside a judgment, a trial court abuses its discretion by setting aside the judgment. *See Erwin and Erwin*, 100 Or App 64, 67, 784 P2d 1109 (1990).

Husband first contends that the trial court erred when it set aside the original consent judgment. Because the judgment is a contract that has been approved by the court, it can only be set aside on grounds adequate to rescind a contract. *See Nieminen v. Pitzer*, 281 Or 53, 57, 573 P2d 1227 (1978) (applying *former* ORS 18.160, the predecessor to ORCP 71B). Under ORCP 71B(1)(c), there must be clear and convincing evidence that the judgment was procured as a result of fraud, overreaching or "other misconduct." *See Erwin and Erwin, supra*, 100 Or App at 66. Wife argues that husband owed a fiduciary duty to her, which he breached. Husband says that, at the time of the settlement, their

---

[4] In the light of the fact that child and spousal support can be modified in the future, we do not express approval of the trial court's reasoning.

relationship did not have that special confidence, trust and reliance on each other that characterizes a fiduciary relationship.

In *Eltzroth and Eltzroth*, 67 Or App 520, 522, 679 P2d 1369 (1984), we said that, "[b]ecause the fiduciary duty [between husband and wife] is imposed as a result of the confidential relationship between the parties, it continues while the parties contemplate dissolution of their marriage as long as the confidential relationship remains intact, and the parties are not dealing at arms' length through separate agents or attorneys."[5] We did not hold that the parties must deal through separate agents or attorneys in order to sever a confidential relationship. A confidential relation exists

> "when there is confidence reposed on one side with a resulting superiority and influence on the other. It is characterized by the dominance by one in whom trust is reposed over the other." *U.S. National Bank v. Miller*, 74 Or App 405, 411, 703 P2d 246 (1985).

A cessation of a confidential relationship can occur as a result of many different actions by the parties.

Here, following the separation, wife moved to another city, began cohabiting with her companion and was completely financially independent of husband. At the time she proposed the marital settlement, she was preparing to move to California. The elements of confidence and reliance are lacking. Under these facts, we conclude that, in April, 1989, there was no fiduciary relationship between the parties as a matter of law, and that they were dealing at arms' length.

Moreover, we find no evidence in the record that supports the setting aside of the judgment on the basis that husband did not disclose the value of his PERS account. Wife testified that she knew husband had a PERS account, and when asked if she knew the value of that account, she said "not exactly." She further testified that she and husband never discussed the PERS account specifically, because "[i]t

---

[5] However, even if the confidential relationship between the parties has ended and they are dealing at arms' length, a party may still have a fiduciary duty to disclose property, such as when a party has sole control over an asset and the other party has no knowledge of the asset. *See Eltzroth and Eltzroth, supra*, 67 Or App at 525. Those circumstances do not exist here.

was part of everything." Wife offered no evidence that, had she known the precise value of the PERS account, she would not have proposed the property settlement. It is an essential part of her burden to prove that misrepresentation was material, *i.e.*, to establish that husband's failure to disclose the value of his PERS account would have affected her proposed settlement. *See Gardner v. Meiling*, 280 Or 665, 671, 572 P2d 1012 (1977). She has not done that.

■■ The trial court also held that husband engaged in misconduct by moving to modify child support after representing that the child support amount in the judgment was a nominal amount that was required by the law and that he would not attempt to collect more than that amount. Although a substantial breach of an agreement could be a ground for rescission, *see Shop. Centers v. Stand. Growth Prop.*, 265 Or 405, 429, 498 P2d 781, 509 P2d 1189 (1973), the language of ORCP 71B(1)(c) restricts relief to instances of fraud, misrepresentation or "other misconduct." We hold that wife must show more than a mere breach of a promise in order to be entitled to relief under ORCP 71B(1)(c). The phrase "other misconduct" in the rule is referable to conduct that is similar in nature to fraud or misrepresentation. Under the circumstances of this case, wife must demonstrate a promissory fraud, that is, she must prove by clear and convincing evidence that husband did not intend to honor the promise not to collect more than a nominal amount of child support at the time he and wife entered into the agreement. *See Butte Motor Co. v. Strand*, 225 Or 317, 321, 358 P2d 279 (1960).[6] There is no evidence that husband did not intend to honor the settlement agreement at any time between when it

---

[6] In *Butte Motor Co. v. Strand, supra*, the court held that the failure to perform a promise relating to future action or conduct does not constitute fraud. Quoting from *Dolph v. Lennon's, Inc., et al.*, 109 Or 336, 350, 220 P 161 (1923), it said:

" 'The general rule * * * is that "fraud cannot be predicated on a promise not performed; that, to constitute actionable fraud there must be a false assertion in regard to some existing matter, by which a party is induced to part with his money or property." The mere nonperformance of a promise made in the course of negotiations or the failure to carry out an intention expressed in the course of such negotiations is not of itself either a fraud or evidence of a fraud, in the absence of allegations *and proof* that the representations were falsely and fraudulently made with intent to deceive; that is, that the statement of intent as to the future was made in bad faith[.] A representation, to be fraudulent in the legal sense, must relate to a past fact or present condition, and must not be a mere promise[.]' " 225 Or at 321. (Citations omitted; emphasis supplied.)

was originally proposed and when the judgment was entered. Rather, the record indicates that husband's decision to seek a modification was based on his later discovery that wife was earning more than he and his former attorney had believed.

 Finally, the trial court held that the judgment should be set aside because of husband's representation to wife that she did not need an attorney. As we have already held, there was no fiduciary relationship between the parties at the time wife proposed the settlement. Wife testified that she had the opportunity to obtain an attorney if she wanted one, and the record indicates that she was financially and emotionally independent of husband. Under these circumstances, the function of husband's attorney was to obtain a judgment that reflected the parties' agreement. In the absence of an intent by husband to defraud wife or of a fiduciary duty, that representation does not afford relief under the rule.

Because the evidence does not support the required findings under ORCP 71B(1)(c), the trial court abused its discretion when it set aside the original dissolution judgment. In the light of that resolution, we need not address the remaining assignments of error on appeal or on wife's cross-appeal. We remand to the trial court to reinstate the 1989 dissolution judgment and then to consider husband's motion to modify the child support judgment.[7]

On appeal, reversed and remanded for reinstatement of original judgment and consideration of husband's petition to modify child support; affirmed on cross-appeal. Costs, not including attorney fees, to husband.

---

[7] Whether husband made a promise to wife not to seek a modification of child support in the future, and wife relied on that promise when she entered into the property settlement agreement, may be a relevant consideration when the trial court considers husband's motion to modify.